In the
# United States Bankruptcy Court
For the Northern District of Illinois

| | |
|---|---|
| IN RE: | EASTERN DIVISION |
| | HON. JACQUELINE P. COX |
| CHERM NELSON, | CASE NO. 18-16860 |
| DEBTOR. | CHAPTER 13 |
| | HEARING DATE: 3/29/2021 |
| | HEARING TIME: 10:00 A.M. |

# CITY OF CHICAGO'S RESPONSE TO DEBTOR'S MOTION TO MODIFY CONFIRMED PLAN

Cherm Nelson ("Debtor") filed a petition for relief under chapter 13 of the Bankruptcy Code, 11 U.S.C. § 101 et seq. ("Code"), on June 13, 2018. The Debtor filed a plan ("Plan" [Docket 2]) along with the petition. An order confirming the Plan [Docket 19] was entered on August 6, 2018.[1] Section 2.1 of the Plan provides that the Debtor will make regular monthly payments of $240.00 for 18 months, monthly payments of $340.00 for 18 months, and states that "[i]f fewer than 60 months of payments are specified, additional monthly payments will be made to the extent necessary to make the payments to creditors specified in this plan."  See Docket 2. Section 3.2 of the confirmed Plan provides that

---

[1] A minute order [Docket 18] was entered in conjunction with the confirmation order adding language to Sections 2.3 and 8.1 of the Plan.

1

> For secured claims of governmental units, unless otherwise ordered by the court, the value of a secured claim listed in a proof of claim filed in accordance with the Bankruptcy Rules controls over any contrary amount listed below. For each listed claim, the value of the secured claim will be paid in full with interest at the rate stated below. Docket 2.

The Plan filed by the Debtor on June 13, 2018, provided an estimated total amount of the City's claim of $4,155.85; valued the secured collateral and secured claim at $3,700.00; and added interest of 4.75% with an estimated total of monthly payments of $3,977.21. See Docket 2. On June 20, 2018, just one week after the Debtor filed her case, the City filed a fully secured claim in the amount of $5,677.85. See Claims Register 1-2. The Debtor did not object to the City's claim or challenge any valuation of the collateral before the confirmation hearing for the Plan. Therefore, the Debtor's Plan was confirmed on August 8, 2018 incorporating the City's fully secured claim of $5,677.85 requiring 100% repayment with interest of 4.75%.

Now, nearly three years after confirmation, the Debtor seeks to modify treatment of the City's secured claim[2] and reduce the dividend to unsecured creditors from 27% to 2%[3]. See Debtor's Motion to Modify Confirmed Plan ("Motion") [Docket 27]. The Debtor alleges that her Plan needs to be modified because it is "running long" because of the City's full secured "wants the case to end as quickly as is just". Docket 27. The Debtor further alleges that she can continue making the monthly payments of $340.00 that are required by the confirmed plan. See Docket 27.

What the Debtor does not allege in her Motion, are any reasons why she should no longer be bound by the terms of her confirmed plan pursuant to Section 1327. The Debtor also fails to allege any substantive explanation why her Plan should be

---

[2] The Debtor has a pending Motion to Determine the Amount of Secured Claim 1 that attempts to challenge the value of City's collateral to strip down the secured amount that must be paid from $5,677.85 to $3,700.00. For the reasons set forth in the City's response to that motion [Docket 33], the motion is meritless. The City's claim is treated as fully secured in this response.

[3] The City timely filed an unsecured claim in the amount of $ 7828.02. See Claims Register 2-1. The City is the Debtor's largest unsecured creditor.

modified to provide improper treatment of the City's fully secured claim or how her proposed modification is made in good faith when it results in fundamentally unfair treatment of her unsecured creditors. The Debtor must remain bound by the terms of the confirmed plan. The changes the Debtor seeks do not satisfy the requirements for modification of the confirmed plan and are not proposed in good faith.

## Effect of Confirmation and Requirements for Modifying a Confirmed Plan

Section 1327(a) of the Code, 11 U.S.C. § 1327(a), provides that "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether the claim of such creditor is provided for by the plan, and whether such creditor has objected to, has accepted, or has rejected the plan."

Even though a confirmed plan binds the debtor and creditors to its terms, at any time before completing plan payments a debtor has the right to request a modification of those terms pursuant to Section 1329, 11 U.SC. §1329. See *Matter of Witkowski*, 16 F.3d 739, 744 (7th. Cir. 1994).

Modification of a confirmed plan is limited to four circumstances under Section 1329. Pursuant to 11 U.S.C. § 1329, a debtor may seek modification,

> (a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—
>
> > (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan; [or]
> >
> > (2) extend or reduce the time for such payments[.]
>
> * * *
>
> (b) (1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section.
>
> > (2) The plan as modified becomes the plan unless, after notice and a hearing, such modification

is disapproved. So, in seeking to modify a confirmed plan, a debtor must still provide proper treatment for secured claims and propose a plan in "good faith."

Section 1325 (a) sets forth the requirements that must be met for a plan to be confirmed. 11 U.S.C. § 1325(a)(3) requires that "the plan has been proposed in good faith and not by any means forbidden by law". 11 U.S.C. § 1325(a)(5) requires that:

with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B) (i) the plan provides that—

(I) the holder of such claim retain the lien securing such claim until the earlier of—

(aa) the payment of the underlying debt determined under non-bankruptcy law; or

(bb) discharge under section 1328; and

(II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable non-bankruptcy law;

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and

(iii) if—

(I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and

(II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the

4

       holder of such claim adequate protection during the period of the plan; or

(C) the debtor surrenders the property securing such claim to such holder[.]

The Debtor has not proposed a modified plan that meets the requirements of Sections 1329(b), 1325(a)(3) or 1325(a)(5). The Debtor clearly is not seeking to provide proper treatment of the City's allowed fully secured claim and the Debtor is not proposing a modified plan in good faith.

## Debtor is Bound by the Confirmed Plan and Must Pay the City's Fully Secured Claim

The Debtor is bound by the treatment of City's claim in the confirmed plan. The City timely filed a fully secured claim just days after the Debtor's petition and proposed plan were filed with the Court on June 13, 2018. An order confirming the Debtor's Plan was entered on August 9, 2018. The Debtor had two months to challenge the City's claim or propose new terms by filing an amended plan. There were no changes made to the Debtor's Plan, and at no point prior to confirmation did the Debtor object to the City's claim. The Debtor's failure to object to the pre-confirmation claim means the City's fully secured claim was deemed as accepted for establishing the value of security and amount to be repaid under the plan. "A secured claim that is filed pre-confirmation without objection (and is therefore "allowed") and is treated in a subsequently confirmed Chapter 13 Plan cannot later be attacked as to the secured value[.]" *In re Adams*, 270 B.R. 273, 278 (Bankr. N.D. Ill. 2001) (citing *Adair v. Sherman*, 230 F.3d 890, 894 (7th Cir. 2000)); see also additional arguments and authorities in the City's response to the Debtor's motion to value the City's claim, Docket 33. The City's secured claim as accepted by the Debtor requires 100% repayment in the amount of $ 5,677.85.

5

# Debtor's Proposed Modification was not Made in "Good Faith"

The Debtor seeks to modify her plan by attempting to strip down the City's claim and drastically reduce the dividend for unsecured creditors. The Debtor alleges that she should no longer be bound by the terms of her confirmed plan because she "just wants the case to end as quickly as is just". See Docket 27. It is abundantly clear that the Debtor's proposed modification was not made in "good faith" pursuant to Section 1325(a)(3).

In determining whether a plan has been proposed in "good faith", in *In re Rimgale*, 669 F.2d 426 (7th Cir. 1982), the Seventh Circuit provided the following guidance

> The correct approach * * * is to treat the issues of substantiality and best effort as elements of good faith. Unless the courts have discretion to consider such factors, the danger exists that Chapter 13 plans could become shams that would emasculate the safeguards that Congress has included in Chapter 7 to prevent debtor abuse of the bankruptcy laws. The courts retain discretion to prevent such abuse, and that discretion can be exercised effectively through a meaningful interpretation of the good faith requirement of § 1325(a)(3). In each case, the bankruptcy court must consider the debtor's entire circumstances to determine whether his plan proposes to make meaningful payments to unsecured creditors. In making that determination, the courts should be mindful of the fact that the unsecured creditors must rely on the court to give meaning to the congressional intent that they receive substantial payments. Within these guidelines, the courts should proceed on a case-by-case basis. *Rimgale*, 669 at 432 citing *In re Burrell*, 6 B.R. 360, 366 (N.D.Cal.1980).

The Seventh Circuit also provided a non-exhaustive list of specific questions that may assist in ascertaining a debtor's "good faith". See *Rimgale* at 433 - 434. The pertinent question in the instant case is whether "the proposed payments indicate a fundamental fairness in dealing with one's creditors". *Rimgale* at 434. See *In re Schaitz,* 913 F.2d 452, 453 (7th Cir. 1990) (a fundamental and encompassing

6

circumstance to assess "good faith" is whether the debtor has dealt fairly with his creditors by trying to repay them to the reasonable limit of his ability).

In *In re Jordan,* 515 B.R. 576 (Bankr. N.D. Ill. 2014), the bankruptcy judge denied a debtor's motion to modify for failing to be proposed in "good faith" because the modification would limit the term to 36 months and reduce the dividend to unsecured creditors from 7% to 1.85 %. *Jordan* at 577. The debtor in *Jordan* argued that she was only required to make payments for the 36-month commitment period required of below median income debtors. Id. The bankruptcy judge disagreed with debtor's arguments and held that the debtor was bound by the confirmed plan that required a minimum percentage to be paid to unsecured creditors. *Jordan* at 578. The judge further held that it was within his discretion to deny the request to modify a plan that was found not be proposed in "good faith" because it did not demonstrate fundamental fairness in dealing with one's creditors. Id. The debtor also made no showing of having difficulty making plan payments. Id.

In this case, the Debtor's motion states that she can continue making the payments under her confirmed plan. See Docket 27. Yet, she wants to stop making payments to her creditors. Without any allegations showing an inability to continue making plan payments, a request to reduce the percentage paid to unsecured creditors from 27% to 2% blatantly lacks fundamental fairness in dealing with the creditors in this case and demonstrates that proposed modification was not made in "good faith".

## Conclusion

For the reasons stated above, Debtor's proposed modification does not meet the requirements of Section 1329. It disregards the binding effect of the Debtor's confirmed plan, is fundamentally unfair to creditors, and demonstrates a lack of "good faith". The Debtor's Motion to Modify Confirmed Plan therefore must be denied.

DATED: 3/26/2021               RESPECTFULLY SUBMITTED,

                               **THE CITY OF CHICAGO**

                               Celia Meza
                               Acting Corporation Counsel

                               By: /s/ Jaime Dowell
                                   Assistant Corporation Counsel

Celia Meza
Acting Corporation Counsel
Jaime Dowell (ARDC #6281312)
Assistant Corporation Counsel
**CITY OF CHICAGO, DEPARTMENT OF LAW**
Chicago City Hall
121 N LaSalle St., Ste. 400
Chicago, IL 60602
Tel:    (312) 742-0056
Email: jaime.dowell@cityofchicago.org

## CERTIFICATE OF SERVICE

      I, Jaime Dowell, an attorney, hereby certify that on 3/26/2021, I caused a copy of the attached City of Chicago's Objection to Plan Confirmation to be served via the court's electronic noticing system for Registrants on those designated to receive such service as provided on the attached Service List.

      /s/ Jaime Dowell

## SERVICE LIST

**Registrants**
(Via CM/ECF)

| | |
|---|---|
| Michael C. Burr | notice@billbusters.com |
| Tom Vaughn | ecf@tvch13.net |
| Patrick S. Layng | USTPRegion11.ES.ECF@usdoj.gov |